First case which is United States v. COUPAR Morning, your honors. My name is Karen Bucher. I represent Douglas Cooper. And with the court's permission, I'd like to reserve a few minutes for rebuttal. Okay. Watch your time there. This is the case where the defendant waived counsel after he pled guilty and before he was sentenced. And the issue in this case is whether or not the discussion between the court and Mr. Cooper during the Feretta hearing established a knowing and voluntary waiver of counsel. Now, in this circuit, since USA v. Erskine, the waiver is evaluated based on what Mr. Cooper understood at that particular hearing where he had the discussion with the judge. But we can consider what he had been told prior to that, can we not, counsel? I don't think so. My reader, Erskine, says it's temporal. You can't evaluate what happened before or after. There are some limited situations which is discussed in Erskine, but basically the focus is on that hearing itself. So you think that we must ignore the fact that he had an initial appearance and then was arraigned on the indictment at which the charges were explained to him on the record and he entered plea, previously had entered pleas of not guilty? We can't consider that as to whether he knew what the elements of bank robbery were? Under USA v. Erskine, no. It's based on a particular time. At Erskine at 355-1169, it says the question is not what the defendant understood throughout the different stages of the proceedings, whether it was pretrial, trial, or sentencing, but specifically what the defendant understood at the particular stage of the proceedings in which he waived. But that's a factual inquiry, isn't it? In other words, we have to satisfy ourselves that the defendant essentially made a knowing relinquishment of a right. Why can't we consider what he had previously been told in determining whether on the date that he requested to represent himself he fully understood the consequences of what he was asking the court for permission to do? Well, based on my reading of USA v. Erskine, it's very temporal. It's very focused on a particular day. And based on my reading of that case, we cannot evaluate what happened before or after. So even if he had been told the day before, that wouldn't count? I know this wasn't the day before. It was eight months, wasn't it? An interval between the time when the charges were reviewed and the prior plea, change of plea hearing, and the time of the sentencing issue? Technically, no. But I think it really depends on what happened the day before. There was a case, USA v. Lopez-Atsuna, where the Ninth Circuit did look at something previously. And what happened in that case was during the Ferretta hearing itself, the district court directly asked the defendant, do you understand the nature of the charges against you? And he flatly said no. This case is different. There was no discussion at all about the bank robbery charges at all. But let me ask you this, and please don't take my question as implying sarcasm, but your client has been around the block a few times on bank robbery charges. If anybody understands what the elements are of a bank robbery, Mr. Coupar seems to me to be a pretty good candidate for an experienced defendant who has previously been convicted and done time on these charges before. Can we not consider that in the factual inquiry as to whether or not he asked to represent himself knowing the consequences of defending a bank robbery charge? Before this case, USA v. Grishkin, I would have said yes. That we could consider it? Yes, but based on this case, no. Okay. And another, the court didn't discuss the nature and also didn't discuss the danger and disadvantages at all. Even though sentencing is towards the end of the proceeding, the district court didn't discuss the dangers and disadvantages of self-representation as it relates to sentencing regarding the guidelines and other post-conviction procedures or motions that he could have made in order for him to make an annoying waiver. And again, your position is that we can't consider the fact that he had previously been sentenced for the same charges. Basically, he'd been through a sentencing proceeding for bank robbery before. Absolutely, based on the temporal ruling in... In Erskine. The second issue, if there's any more questions regarding the first one. The second issue I find very interesting is whether or not that five-year parole by letter sentence opposed on Mr. Cooper can be used to enhance his sentence. That sentence is unconstitutional. It's invalid because he wasn't represented by counsel at those proceedings. And we recognize he doesn't have a sixth amendment right to counsel at parole liberation hearings, but he has a due process right. And it's available in certain situations. And it's, the U.S. Supreme Court says you evaluate these cases by case by case situation. What if we are to find as a, I guess it would be as a matter of fact, that he waived representation at the parole revocation hearing, preferring instead to have a psychologist appear as his representative at the parole revocation proceeding? Isn't this a right that can be waived? It can be, but it didn't. And I'm glad that you raised that issue because I was going to discuss that. Okay. The parole commission manual mandates that in order for someone to waive counsel at a parole hearing, he must or she must execute a form called I-16. It's the form where you waive counsel. The form that the district court relied on was a notice of hearing. And I studied that yesterday in more detail. And the quality is really poor on that one. But the representative that the notice was referring to was at the end of the hearing to make some sort of statement or some kind of remarks. He wasn't in the role of an advocate. So the notice of hearing and his, Mr. Cooper's decision to elect Dr. Merod to represent him as counsel, but as someone there to make remarks at the end. And if you read the form, even though it's hard to read, it's real clear. That person's job is not an advocate. It's to make some statements at the close of the proceedings, which tells me that that person cannot guide Mr. Cooper through the proceedings, cannot advise him, cannot make objections, cannot do anything except for at the end make some remarks. And that really came to light to me yesterday while I was preparing. And that's ER-136. Okay. Do you want to save your time or do you want to? Yes, Your Honor. May it please the Court. Adam Braun with the United States. I'd like to start first with the issue about whether the defendant's waiver was knowing and intelligent because of the two issues, that's the one that the government bears the burden on. And I would like to emphasize that the inquiry is really the defendant's understanding, not what the court said or what the court itself understood, and that the Ninth Circuit found in U.S. v. Lopez-Asuna. With respect to Erskine, which counsel for the defendant has relied heavily on, I would note that in that particular case, Erskine itself recognized that it can be appropriate for a reviewing court to look outside the record of the specific Ferretta hearing to the extent that the information discussed in those other hearings is probative of the defendant's understanding at the time of the waiver. And actually, in Erskine, I believe, the court looked to a plea hearing, I'm sorry, in Lopez-Asuna, the Ninth Circuit actually looked to a hearing that took place after the Ferretta waiver where there was a discussion of the charges the defendant had been charged with, violation of Title VIII in United States Court Section 1326, and there was a colloquy between the court and the defendant after the fact. With respect to Ballew, U.S. v. Ballew, a Ninth Circuit opinion from 1987, the Ninth Circuit also, although it did reverse the conviction in that case, it looked to a plea hearing to find two of the three factors. The charges and penalties had not been discussed at the Ferretta hearing, but based on its review of the plea hearing, it found that the defendant did properly understand the charges and penalties, but found that neither at the plea hearing nor at the Ferretta hearing were the perils or dangers of self-representation discussed. Yeah, but Erskine says only a specific inquiry into the status of the defendant's knowledge and understanding at the time of the purported waiver will allow us to determine whether Erskine opted to forego counsel with eyes open. And you'll have to concede, I think, that the colloquy here was fairly succinct. It was succinct, but Erskine does recognize, while it's true that the relevant timeframe for a defendant's understanding is the time surrounding the waiver of right to counsel, it is proper for court to look outside that record to the extent provative of the defendant's understanding. Well, can they look, as Judge Tallman's question asked of counsel for Mr. Cooper, can, are we supposed to take into account his degree of sophistication as someone who's been around the block? Yes, Your Honor. In fact, the, in Johnson v. Zerbst, 304 U.S. 458, the Supreme Court recognized that defendant-specific factors,  in reviewing the district court's finding that a waiver was non-intelligent. And in the record of this case, where do we go for the evidence that he's familiar with the charges and the consequences of his having pled to them? Your Honor, there's actually three different hearings up to the time of the plea. What was the most recent before the sentencing? Well, besides the September 9, 2000 plea hearing and the defendant appeared on April 23, 2001, the district court specifically asked the defendant whether he had reviewed the presentence report, which itself discussed the charges and the penalties in the case and summarized the offense conduct. So that was roughly three weeks before the FREDA hearing. And then at the FREDA hearing itself, the court advised the defendant that the sentencing hearing would center on the career criminal enhancement and specifically advised the defendant that his range would be 151 to 188 months, should the court find him to be a career offender. And in response, the defendant acknowledged that the statutory maximum was 240 months. With respect to the disadvantages of self-representation and tailoring those to the sentencing stage, the district court again not only advised him that it would be foolish to waive his right to counsel and that he was, quote, disadvantaging yourself in a most significant way and also that his ability was far less than a competent attorney, but the court again focused on the career offender enhancement, which would be the focus of the sentencing, advised him of the applicable range. The defendant in response said, that's, I believe, approximately correct in response to the guideline range that the court indicated. And the court then advised him at your age that could, in effect, be a life sentence, advising him of what the consequences of losing the litigation of the career offender enhancement would be. And the defendant then responded that he understood the range for a career criminal and that he could, in effect, he was acknowledging it could, in effect, be a death sentence because there's no difference at my age between a 15-year sentence and receiving a statutory maximum of 240 months. And beyond this, I... That's an interesting concept of death sentence and its duration rather than immediate execution, but maybe he has a sense of the history of capital cases. I think also he was in recognition of his age. The court had said at your age it would affect... That's a life sentence, not a death sentence. That's true. That was the defendant's indication that he believed it to be a death sentence. Besides the specific factors of this being the defendant's third federal prosecution for bank robbery, I would just like to emphasize that the court has specifically recognized that a district court is in the best position to assess whether a defendant in knowing and intelligently waiving his right to counsel, and that such a finding is influential. Here, the district court had the case pending before it for two and a half years. There had been dozens of hearings. There had been four previous sentencing hearings where the defendant was represented by a member of the Federal Public Defender's Office, at which one of those, the April 23, 2001 hearing, prior to the defendant waiving right to counsel, the court had specifically found the career offender enhancement applied. The counsel for the defendant from the representative of the Federal Public Defender's Office had fully litigated the career offender enhancement. Counsel, I don't mean to cut you off, but you're running out of time. Could you turn to the second issue with regard to the Pearl revocation here? Yes, Your Honor. I would just like to emphasize on that issue again the burden is on the defendant. It's a collateral attack 20 years after the 1984 Pearl revocation hearing. The factual difficulties, sorry, the difficulties in fact-finding are really the reason why the burden is placed on the defendant when there is a collateral attack at such a late stage. Here, in this case, the records that are still available 20 years later all suggest that the defendant was advised and waived counsel. The notice of hearing indicates he was elected. There's not much evidence of that. There's just a check on a box and the forms that the manual calls for aren't in the files, and that's certainly something that you wouldn't expect the defendant to be able to come up with, would you? Well, Your Honor, the defendants offered no affirmative evidence that there was not an advising or a waiver, and again, what does exist suggests there was a waiver. Well, but wait a minute. You say there's no affirmative evidence. What's he supposed to come up with when the entity, the bureaucracy, that puts him through the process doesn't have its own records in order? Well, Your Honor, the defendant himself doesn't claim to recall whether he was- Well, because he said he was mentally incompetent at the time. Well, I think the records, the summary of the hearing suggests at that time that he was suffering at most from some sort of form of depression. It wasn't as if he was schizophrenic or something else. There are three separate documents that are in the file, all of which suggest that the defendant was advised by the seven-way of counsel, the notice of hearing roughly a month before the hearing where he indicates that he's electing to be represented by the psychologist, the documents from the hearing itself, the parole guidelines worksheet and revocation hearing checklist specifically advised. Those were roughly from that date, July 25, 1984. They indicate that he was advised of his right to counsel. That box is checked and he completed the I-16. The initial hearing summary format again indicates that he elected to be represented by the psychologist who presented the issue of his depression. Let's assume that we were to conclude that there's not clear evidence that he actually waived. What's the result then? The result is in favor of the government because the burden is on the defense. It's as if the government is in the position of the defendant in the Mohawk case where it was a trap. I'm assuming, let's assume that we say he carried the burden, that he was uncounseled, that he did not waive counsel. If a finding is the defendant carried by preponderance of the evidence, that burden, then the remedy would be to remand to the district court for sentencing consistent with a finding that that particular enhancement is not available because the revocation hearing was unconstitutionally conducted. All right. Okay. Thank you. Thank you. Thank you. Thanks, both counsel, for your arguments. Very helpful. The case just argued is submitted. The next case on calendar is United States v. DeMeyers, which is off calendar. We therefore call Gamo v. City of Le Havre. Good morning, Your Honor. Hold on a second. I won't take this out of your time.
judges: Tashima, Fisher, Tallman